**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1781-19

CHRISTOPHER ROCAP,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
STATE POLICE RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Argued May 10, 2021 – Decided July 7, 2021

Before Judges Sabatino, Currier, and Gooden Brown.

On appeal from the Board of Trustees of the State Police Retirement System, SPRS No. x-x168.

Christopher A. Gray argued the cause for appellant (Sciarra & Catrambone, LLC, attorneys; Christopher A. Gray, of counsel and on the briefs; Frank C. Cioffi, on the briefs).

Jeffrey D. Padgett, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Jeffrey D. Padgett, on the brief).

PER CURIAM

After appellant developed post-traumatic stress disorder (PTSD) while working as a New Jersey State Police (NJSP) trooper, he applied for accidental disability retirement benefits. Although he was approved for an ordinary disability retirement, the Board of Trustees, State Police Retirement System (Board) denied his application for accidental disability benefits. The Board concluded that appellant had not established the causal connection required under N.J.S.A. 53:5A-10(a) to qualify for an accidental disability retirement. We affirm.

Appellant began working as a NJSP trooper in 1993. In 2001, he joined the Technical Emergency and Mission Specialist Unit (TEAMS), which specializes in dangerous and technical assignments. Appellant's experiences with TEAMS included rescuing persons trapped in burning buildings, recovering the bodies of drowning victims, engaging and talking down suicidal persons, and dealing with armed suspects holding hostages.

In 2010, appellant began to experience back pain. Examinations by numerous specialists and multiple courses of treatment did not alleviate the pain.

2                                                                                    A-1781-19

In 2012, appellant requested a transfer to a desk job. Six months later, he was assigned to the traffic and public safety office.

Appellant was also referred to Karen Husband, the Director of the NJSP Office of Employee and Organizational Development because he was depressed. Husband met with appellant, who spoke "about his assignments in more of a general way . . . ."

Around the same time, appellant began treatment with James Hoyme, M.D. – a psychiatrist. Dr. Hoyme diagnosed appellant with chronic PTSD "due to cumulative stress related to his work." Appellant continued psychotherapy sessions with Dr. Hoyme for a number of years and was prescribed medication.

Appellant was "put out of work" in November 2013. In September 2014, he underwent a fitness for duty evaluation with Matthew Guller, Ph.D. In discussing events that occurred during his tenure as a trooper, appellant told the doctor about an on-duty fatal shooting that occurred in 2004, during which appellant killed the suspect (the 2004 incident). Appellant advised that he returned to the TEAMS unit after the incident.

The doctor's report continued, stating:

> [Appellant] reported seeing 'so much' during his time in the unit. He stated that over his entire career in the TEAMS Unit, he responded to over 1200 incidents that included such traumatic events as people blowing other

3

people's heads off right in front of him . . . . He told [me] that all of these incidents started getting to him, and being a supervisor made things worse.

Dr. Guller concluded appellant was unfit for duty. He opined that appellant suffered from "a degree of mental illness or disability in his job-related conduct that is of sufficient magnitude . . . [to find appellant] impaired and unlikely to be restored to duty in a reasonable period of time."

Appellant decided to retire. His last day of work was November 1, 2014.

In January 2015, appellant filed an application for accidental disability retirement benefits due to his back pain and PTSD. Appellant listed three "accident dates" in support of his application: January 26, 2011, August 22, 2011, and January 21, 2012. He did not list the 2004 incident.

Appellant also submitted a March 1, 2015 narrative report authored by Dr. Hoyme, diagnosing appellant with severe and chronic PTSD. In checking the box that confirmed appellant was totally and permanently disabled as a result of an accident that occurred during the performance of his regular duties, Dr. Hoyme stated appellant was "subject [in his TEAMS assignment] to 24/7 on-call deployment to assess and deal with a range of perilous emergent situations." He attached a list, prepared by appellant, of ten events appellant believed to be his most stressful experiences while working with TEAMS. The list included

the 2004 incident. Dr. Hoyme's report concluded that appellant's PTSD "was caused by the cumulative impact over time of his repeated exposure to extreme danger, violence, deaths, and injuries in his work as a [NJSP] Trooper."

On June 1, 2015, appellant underwent an independent psychological examination with Daniel B. LoPreto, Ph.D. In finding appellant was totally and permanently disabled and unable to perform his employment as a NJSP trooper, Dr. LoPreto agreed with Dr. Hoyme's conclusion that appellant's psychological condition was caused by the cumulative impact of his job duties with the TEAMS unit.

In July 2015, the Board found appellant permanently and totally disabled and granted him ordinary disability retirement benefits. However, the Board denied accidental retirement benefits because "the incidents of January 26, 2011, August 22, 2011 and January 21, 2012 are not undesigned and unexpected." It explained: "[T]he medical documentation provided indicates that your disability is not the substantial contributing cause from the incidents[,] . . . [r]ather, it is a culmination of multiple incidents experienced during your employment as a [NJSP] Trooper."

The Board further explained that appellant's disability "did not result from direct personal experience of a terrifying or horror-inducing event that involved

actual or threated death or serious injury, or a similarly serious threat to the physical integrity of the member or another person." The accidents appellant cited were "not objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." "The Board could find no evidence to satisfy the reasonable person standard from the incidents of January 26, 2011, August 22, 2011 and January 21, 2012."

After appellant filed an appeal, the matter was transferred to the Office of Administrative Law. Thereafter, appellant amended his original application for benefits, alleging the 2004 incident was the sole cause of his permanent and total disability.

During the 2004 incident, appellant responded to a situation where an individual suspected of several armed robberies had barricaded himself inside a vehicle in a parking lot. Prior attempts at communication with the suspect had failed. Appellant shot and killed the suspect after the suspect pointed his firearm at appellant and two other troopers.

After the 2004 incident, appellant was placed on administrative leave pending a fitness for duty evaluation. Due to scheduling issues with the psychiatrist, appellant was not released back to work until sixty-two days after the incident. During that time appellant experienced difficulty sleeping, night

sweats and nightmares.  Appellant alleged these issues continued from 2004 to 2010.

On November 15, 2016, the Board reconsidered appellant's application and affirmed he was totally and permanently disabled.  However, the Board denied accidental retirement benefits because appellant had not shown evidence of a direct causation to the 2004 incident.  Appellant again contested the Board's decision.

Prior to the hearing before the Administrative Law Judge (ALJ), appellant's attorney referred him to Jennifer Kelly, Ph.D., ABPP[1], for a psychological evaluation.  Dr. Kelly was asked to determine "the nature, cause, and extent of [appellant]'s current psychological injuries."  In her October 13, 2015 report, Dr. Kelly found appellant met the criteria for PTSD.  She stated:

> [Appellant] was involved in an on-duty shooting while employed as a [NJSP] Trooper in the capacity of a TEAMS Unit member in which he fatally shot a suspect.  While he subsequently was involved in numerous barricades, hostage situations, suicide attempts, and dive-rescues that were also viewed to be traumatic, the [2004 incident] is viewed to be the event which instigated his psychiatric symptomatology.

---

[1] Dr. Kelly is board certified in Police & Public Safety Psychology.

A-1781-19

She found the 2004 incident "should be considered the impetus to his present condition."

At appellant's counsel's request, Dr. Hoyme provided a second narrative report in January 2016 in which he opined that appellant's disabling "[PTSD] was caused by the fatal shooting event on October 14 (sic), 2004" and "became worse with subsequent events."

The doctor stated that appellant had only referred to the 2004 incident once in their numerous therapy sessions over several years. At that time, appellant only "mentioned [the] event in passing without evident distress, but only as one of the many disturbing experiences inherent in TEAMS work." After counsel provided the details of the 2004 incident, Dr. Hoyme questioned appellant about it. The doctor wrote: "Reading [appellant's] detailed, vivid description of this event and its catastrophic effects on him has been no less than a revelation that has changed my opinion about the onset and cause of his severe and eventually disabling condition, Chronic [PTSD]."

After reviewing Dr. Kelly's report, Dr. LoPreto issued an addendum to his original report on January 8, 2016. He noted that appellant had not mentioned the 2004 incident during the initial evaluation in June 2015. He stated further:

> It appears that [appellant]'s attorney has identified the [2004 incident] as being significant in his application

8

process. This incident was noted briefly by Dr. Guller before noting an additional 1200 incidents, briefly by Dr. Kelly before noting subsequent 'multiple high stress situations,' and briefly by Dr. Hoyme, and describing, '[appellant] had mentioned this event in passing without evident stress, but only as one of the many disturbing experiences inherent in TEAMS work . . . '

It appears to the current reviewer that the [2004 incident], the aftermath of which [appellant] was now able to recount in vivid detail [eleven] years later to the apparent surprise of even his treating therapist, became significant only after [appellant's] attorney determined it should be.

While I agree that [appellant] is demonstrating symptoms suggestive of among other things, [PTSD], and that he is currently permanently and totally disabled, I would again reiterate that all current documentation 'was caused by the cumulative impact over time of his repeated exposure to danger, violence, death, and injuries in his work as a [NJSP] Trooper.'

After four days of hearings, the ALJ affirmed the Board's denial of accidental disability retirement benefits. The ALJ analyzed the factual record in detail and weighed the testimony of expert witnesses Dr. Kelly and Dr. LoPreto. The ALJ was "better persuaded by and [gave] greater weight to the testimony of Dr. LoPreto on the issue of causation, specifically crediting his detailed tying of [appellant's] symptomology to [appellant's] history of work[-]related stressors."

The ALJ found Dr. LoPreto both "credible and believable" and that his opinion "was consistent with original findings of Dr. Hoyme, [appellant's] treating [psychologist]." The ALJ concluded that "[appellant's] psychological condition was caused by the cumulative impact over time of his repeated exposure to danger, violence, death, and injuries in his work as [an NJSP] Trooper." The ALJ also found the history of appellant's application process was important and reasoned that "Dr. LoPreto's concerns that the [2004 incident] became significant only after [appellant's] counsel determined it should be, are supported by the objective evidence."

The Board adopted the ALJ's initial decision on November 26, 2019. However, because a majority of the Board was not present at the meeting, a final administrative action was not taken.[2] When the parties did not request an additional extension of time for the Board to issue a final decision, the initial decision became a final decision on December 10, 2019. Therefore, the initial decision, as adopted, is the Board's final decision before this court. N.J.A.C. 1:1-18.6(e).

Our review of an administrative agency action is limited. Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206 N.J. 14, 27 (2011). "We recognize that

---

[2] See N.J.S.A. 53:5A-30(g).

10

agencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Fireman's Ret. Sys., 198 N.J. 215, 223 (2009) (alteration in original) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)). Therefore, we will not "substitute [our] own judgment for the agency's, even though [we] might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence" in the record as a whole. In re Virtua-W. Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006) (citations omitted).

The factual "findings of an ALJ 'are considered binding on appeal, when supported by adequate, substantial and credible evidence.'" Oceanside Charter Sch. v. N.J. State Dep't of Educ., 418 N.J. Super. 1, 9 (App. Div. 2011) (quoting

In re Taylor, 158 N.J. 644, 656 (1999)).  The review of an agency interpretation of law is de novo.  Russo, 206 N.J. at 27.

Appellant asserts that this court should reverse the Board's decision because "it is not supported by substantial credible evidence."  He contends his PTSD originated and directly resulted from the 2004 incident, thus qualifying him for accidental disability benefits.

The State Police Retirement System (SPRS) provides for ordinary and accidental disability benefits.  N.J.S.A. 53:5A-9; N.J.S.A. 53:5A-10.  The main difference between ordinary and accidental disability retirement "is that ordinary disability retirement need not have a work connection."  Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42 (2008).  Moreover, accidental disability retirees receive significantly greater benefits than those provided to ordinary disability retirees.  Id. at 43 (citing Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 193 n.2 (2007)).

An individual, meeting the age and service criteria, may be retired on an ordinary disability, provided the employee "is mentally or physically incapacitated for the performance of his usual duty and of any other available duty" and "such incapacity is likely to be permanent and of such an extent that he should be retired."  N.J.S.A. 53:5A-9(a).  "Essentially, a qualified member

who is permanently disabled for any reason will qualify for ordinary disability."
Patterson, 194 N.J. at 42.

In contrast, an individual is only eligible for accidental disability retirement benefits if "the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties . . . ." N.J.S.A. 53:5A-10(a). Our Supreme Court has stated that to receive accidental disability benefits, a claimant must prove:

> 1. that he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is:
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

13

[Mount v. Bd. of Trs., Police and Fireman's Ret. Sys., 233 N.J. 402, 421 (2018) (quoting Richardson, 192 N.J. at 212-13).]

In Patterson, our Supreme Court developed the standard for qualification for accidental disability benefits when a member's claim is grounded on "a permanent mental disability as a result of a mental stressor, without any physical impact . . . ."  194 N.J. at 29, 33.  The Court stated that a member must prove that the disability resulted from a "direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person."  Id. at 34.

The traumatic event must be "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury."  Ibid.  A claimant has the burden of proving "direct result" by competent medical testimony.  Richardson, 192 N.J. at 194-95.  The Court stated it "rel[ies] upon the expertise of the boards to separate legitimate from illegitimate claims and to resolve the difficult causation problems inherent in accidental mental disability claims."  Patterson, 194 N.J. at 51.

Here, the ALJ properly considered both experts' testimony and opinions and made credibility findings.  The ALJ described Dr. LoPreto's testimony as

"clear, concise [and] detailed . . . ."  He was also persuaded by Dr. LoPreto's testimony on the issue of causation, "crediting his detailed tying of [appellant's] symptomology to . . . [appellant's] history of work[-]related stressors."

In his initial decision, adopted by the Board, the ALJ found appellant's application history "most compelling" to his determination regarding the lack of causality.  The original application for accidental disability filed in 2015 listed three incidents that occurred in 2011 and 2012.  These were the "accidents" that appellant stated caused his PTSD and qualified him for an accidental disability retirement.

Appellant's treating psychiatrist – Dr. Hoyme – opined that appellant's PTSD "was caused by the cumulative impact over time of his repeated exposure to extreme danger, violence, deaths, and injuries in his work as a [NJSP] Trooper."  Dr. LoPreto agreed with Dr. Hoyme's findings of permanent disability and causality, stating it was the cumulative impact of the stressors of appellant's work as a trooper and TEAMS officer.

Most importantly, appellant only mentioned the 2004 incident "in passing" during his several years of treatment with Dr. Hoyme.  And he did not mention the incident at all during his psychological evaluation with Dr. LoPreto.

A-1781-19

It was not until after the Board denied appellant's initial application that he amended his application through counsel to include the 2004 incident. Thereafter, counsel referred appellant to Dr. Kelly and alerted Dr. Hoyme to the new information.

The ALJ found Dr. LoPreto "particularly credible and believable" because his evaluation "was consistent with the original findings of Dr. Hoyme, the [appellant's] treating [psychiatrist].  LoPreto's concerns that the [2004 incident] became significant only after [appellant's] counsel determined it should be, are supported by the objective evidence."

The ALJ concluded that appellant's condition was caused by the cumulative impact over time of his repeated exposure to danger, violence, death, and injuries in his work.  Therefore, the ALJ found appellant failed to meet his burden as to causation to qualify for accidental disability retirement benefits.

We are satisfied the ALJ's decision and the Board's subsequent adoption of it were based on the substantial, credible evidence in the record.  While we commend appellant's service to this state and are sympathetic to his mental condition, under the circumstances presented before us, we cannot disturb the Board's determination that appellant did not satisfy the stringent requirements of Richardson and Patterson.

A-1781-19

Appellant continued to work for six years after the 2004 incident without complaint and was promoted twice. The record is devoid of any medical treatment following the incident. Appellant stated he developed back pain in 2010 and was diagnosed with PTSD a few years later. However, while assigned to TEAMS, appellant responded to over 1200 incidents that included traumatic events such as "people blowing other people's heads off right in front of him." Appellant's treating psychiatrist originally wrote that his PTSD "was caused by the cumulative impact over time of his repeated exposure to extreme danger, violence, deaths, and injuries in his work as a [NJSP] Trooper." All of the experts agreed with that conclusion until appellant's counsel amended the application to refer to the 2004 incident.

We are satisfied the ALJ's conclusion that appellant's condition was not the direct result of the traumatic 2004 incident is supported by the substantial credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1781-19