**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3633-19

BARRY MESMER,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE  AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted March 21, 2022 – Decided March 30, 2022

Before Judges Rothstadt and Mayer.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx-5049.

Alterman & Associates, LLC, attorneys for appellant (Stuart J. Alterman and Timothy J. Prol, on the briefs).

Robert Seymour Garrison, Jr., Director of Legal Affairs, PFRSNJ, attorney for respondent (Thomas R. Hower, Staff Attorney, on the brief).

PER CURIAM

Petitioner Barry Mesmer appeals from a final agency decision by the Board of Trustees (Board), Police and Firemen's Retirement System (PFRS), finding he is not entitled to accidental disability retirement (ADR) benefits under N.J.S.A. 43:16A-7.  We affirm.

We summarize the relevant facts.  Mesmer began working for the Evesham Police Department in November 2006.  On February 14, 2016, Mesmer was dispatched in response to a call regarding a potential suicide.  Based on the address, Mesmer knew he was driving to the home of M.H.,[1] an Evesham Township firefighter.  Mesmer described his relationship with M.H. as professional, but stated they were not close friends.

When Mesmer arrived at M.H.'s house, a woman and her son ran out, screaming "[h]e's inside, he shot himself."  Inside the house, Mesmer saw a white dog splattered with blood and M.H. propped against the fireplace with a shotgun under his leg and his head blown off.  He also saw brain matter everywhere and smelled the strong odor of gunpowder and blood.

Mesmer's supervisor instructed Mesmer to stay with the body to prevent the scene from contamination.  Mesmer did not touch the body, nor did he see the body being removed from the house.  After the body was removed, Mesmer

---

[1] We use initials to protect the identity of the suicide victim and his family.

was assigned to comfort M.H.'s wife and son. He also transported M.H.'s daughter to the police station.

After completing his shift on February 14, Mesmer felt depressed and had trouble disassociating from the incident. When he returned to work two days later, Mesmer attended a debriefing to discuss the incident. Mesmer did not speak during the debriefing because he felt uncomfortable discussing his feelings in the aftermath of M.H.'s suicide. Mesmer told his supervisor he was sleeping poorly, experiencing flashbacks, and reliving the incident. A chaplain sent Mesmer home and recommended he take time off from work.

After the incident, Mesmer saw a psychiatrist. When Mesmer returned to work, he performed clerical jobs and used headphones to help him focus on work tasks. Although he attempted to return to his normal work routine, Mesmer concluded he was unable to continue working as a police officer.

In June 2017, more than one year after M.H.'s suicide, Mesmer filed for ADR benefits, alleging a mental disability. On January 9, 2018, the Board denied Mesmer's application for ADR benefits, finding the traumatic event was not undesigned and unexpected. The Board also found the incident was not a terrifying or horror-inducing event that would be objectively capable of causing

A-3633-19

permanent mental disability to a reasonable person. Consequently, Mesmer received ordinary disability retirement benefits.

Mesmer asked the Board to reconsider denial of ADR benefits. The Board declined. Mesmer appealed the Board's decision, and the matter was transferred to the Office of Administrative Law.

An administrative law judge (ALJ) conducted hearings on August 22, 2019 and October 1, 2019. During the hearings, Mesmer testified he never handled a suicide involving someone he knew and was not trained or prepared to witness the gruesome scene on February 14, 2016. During his career on the police force, Mesmer witnessed gruesome scenes before the incident with M.H., including seeing dead people who had been eaten by animals and smelling the overwhelming stench of death from decaying bodies. Mesmer explained his reaction to these deaths differed because he did not know those victims.

Mesmer also provided a brief description of his police academy training. He recalled attending the New Jersey Police Academy but did not remember any curriculum for responding to suicide scenes. However, Mesmer testified his job responsibilities included: responding to domestic abuse calls, securing crime scenes, controlling crowds in emergency situations, assisting in evacuations,

performing rescues, and withstanding exposure to stress involved with assisting families with incidents of suicide.

Mesmer's wife, Keli Mesmer, testified as well. According to Keli Mesmer, after the incident on February 14, 2016, her husband disengaged from her and the children. She testified "[t]hat incident fundamentally changed who my husband is" because "he's not as open now, he gets irritated very easily, he can't remember things, he's not as engaged with the kids."

Mesmer also offered the testimony of Dr. Garry Glass, a psychiatric expert, who addressed causes associated with post-traumatic stress disorder (PTSD). At the Board's request, Dr. Glass began treating Mesmer in June 2016. Dr. Glass diagnosed Mesmer as suffering from PTSD attributable to the February 14, 2016 incident. The doctor explained Mesmer was unprepared, either by his training or work experience, for the events at M.H.'s home on February 14, 2016. In an April 28, 2017 written report to the Board, Dr. Glass opined Mesmer could not return to police work due to his PTSD.

In a March 17, 2020 written decision, the ALJ concluded Mesmer was not entitled to ADR benefits. The ALJ found the events of February 14, 2016 were terror or horror-inducing events which would cause a reasonable person in a similar situation to suffer a disabling mental injury under Patterson v. Board of

Trustees, State Police Retirement System, 194 N.J. 29 (2007). However, the ALJ determined the event was not "undesigned and unexpected" under Richardson v. Board of Trustees, Police and Firemen's Retirement System, 192 N.J. 189 (2007). The ALJ concluded

> Mesmer was not placed in a situation where he lacked equipment or training. He had previously been called to gruesome scenes involving death and decaying bodies. Further, although he did not anticipate his reaction, Mesmer knew in advance that he was responding to a potential suicide at the home of a man he knew. As Dr. Glass testified, suicides often involve gunshots, and before Mesmer entered the house he knew that he could encounter the aftermath of a suicide by gunshot.

Based on the testimony, "including Mesmer's job responsibilities, his training and experienced, and the circumstances of the [i]ncident," the ALJ concluded Mesmer failed to meet "his burden to demonstrate that the incident of February 14, 2016, which is the cause of his disability, meets the 'undesigned and unexpected' standard of Richardson and, therefore, he is not able to sustain his application for ADR benefits."

On April 14, 2020, the Board modified the ALJ's initial decision, rejecting the conclusion the incident satisfied the terrifying or horror-inducing prong under the Patterson test. Additionally, the Board adopted the ALJ's conclusion

A-3633-19

the incident was not undesigned and unexpected" and thus denied Mesmer's application for ADR benefits.

On appeal, Mesmer argues the ALJ erred in determining the incident on February 14, 2016 was undesigned and unexpected. He also challenges the Board's modification of the ALJ's decision regarding his failure to satisfy the terror and horror-inducing prong under Patterson. He further contends the Board's decision was not based on substantial credible evidence in the record and the denial of his application for ADR benefits was arbitrary, capricious, and unreasonable. We disagree.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. The party who challenges the validity of the administrative decision must demonstrate it was arbitrary, unreasonable, or capricious. Boyle v. Riti, 175 N.J. Super. 158, 166 (App. Div. 1980).

We accord deference to the Board's interpretation of a statute it is charged with enforcing. Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund,

449 N.J. Super. 478, 483 (App. Div. 2017), aff'd o.b., 233 N.J. 232 (2018). "'Such deference has been specifically extended to state agencies that administer pension statutes,' because 'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Ibid. (quoting Piatt v. Bd. of Trs., Police and Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)).

Additionally, we will affirm an agency's findings of fact if "supported by adequate, substantial and credible evidence." In re Taylor, 158 N.J. 644, 656-57 (1999) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "The choice of accepting or rejecting testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Oceanside Charter Sch. v. Dep't of Educ., 418 N.J. Super. 1, 9 (App. Div. 2011).

Accidental retirement disability benefits require an employee demonstrate he or she "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his [or her] regular or assigned duties." N.J.S.A. 43:16A-7(a)(1). "[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson, 194 N.J. at 43.

8                                          A-3633-19

In <u>Richardson</u>, our Supreme Court held a claimant seeking ADR benefits must prove the following:

> 1. that he [or she] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member . . . ;
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [<u>Richardson</u>, 192 N.J. at 212-13 (2007).]

A claimant who has suffered a "permanent mental injury caused by a mental stressor without any physical impact can satisfy the <u>Richardson</u> standard." <u>Patterson</u>, 194 N.J. at 48. The <u>Patterson</u> Court held:

> The disability must result from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person. By that addition, we

A-3633-19

achieve the important assurance that the traumatic event posited as the basis for an accidental disability pension is not inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury.

[Id. at 34.]

Subsequently, the Court identified a two-part analysis to be applied in cases asserting a permanent mental incapacity resulting from "an exclusively psychological trauma." Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 426 (2018). "The court first determines whether the member directly experienced a 'terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'" Ibid. (quoting Patterson, 194 N.J. at 50). If the event meets the Patterson test, the court then applies the Richardson factors to the member's application. Ibid.

As the Court noted in Russo, "an employee who experiences a horrific event which falls within his [or her] job description and for which he [or she] has been trained will be unlikely to pass the 'undesigned and unexpected' test." 206 N.J. at 33. However, "the Board and a reviewing court must carefully consider not only the member's job responsibilities and training, but all aspects

of the event itself. No single factor governs the analysis." <u>Mount</u>, 233 N.J. at 427.

We first address whether the Board erred in modifying the ALJ's initial decision that the events of February 14, 2016 satisfied the terror or horror-inducing requirement under <u>Patterson</u>. Having reviewed the record, we agree with the ALJ's finding that Mesmer suffered a terrifying and horror-inducing event on February 14, 2016. The gruesome discovery of M.H.'s death by suicide from a self-inflicted gunshot wound to his head was the direct cause of Mesmer's PTSD and subsequent mental disability. Despite the absence any personal threat to his safety, the traumatic event Mesmer experienced on February 14, 2016 was "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury." <u>Patterson</u>, 194 N.J. at 34. As a result of the horrific event, Mesmer had trouble concentrating, disengaged from his family, and failed to return to work as a police officer. Based on the undisputed medical testimony, Mesmer suffers a disabling mental injury stemming from the horrific event of February 14, 2016.

Because Mesmer met the <u>Patterson</u> test, we next examine whether he satisfied the "undesigned and unexpected" prong under <u>Richardson</u>. On this

11

record, we agree Mesmer failed to satisfy the undesigned and unexpected requirements to warrant ADR benefits.

In Richardson, satisfaction of the "undesigned and unexpected" prong requires an event "extraordinary or unusual in common experience" and not "injury by ordinary work effort." Richardson, 192 N.J. at 201 (quoting Russo, 62 N.J. at 154). "The polestar of the inquiry is whether, during the regular performance of [the member's] job, an unexpected happening . . . occurred and directly resulted in the permanent and total disability of the member. Id. at 214.

Here, Mesmer failed to satisfy the undesigned and unexpected requirement under Richardson. Mesmer's job functions as of February 14, 2016, included protecting accident scenes, preventing destruction of evidence, providing support at crime scenes, examining ill or injured persons, removing dead or injury persons from vehicles at crash scenes, communicating with distraught persons, and withstanding exposure to and dealing with stress involving incidents of suicide. Mesmer received training, both at the police academy and through the course of his career in law enforcement, in responding to situations involving graphic and gruesome deaths. Mesmer was not a rookie officer and, during his career in law enforcement, he responded to at least ten calls involving gruesome and disfigured dead bodies or serious injuries.

12

Mesmer conceded he did not experience any disabling mental injury after responding to those deaths and he returned to work without incident after each of those events.

Additionally, while Mesmer knew M.H., the two men were not even casual friends. Mesmer provided no evidence of any close, personal relationship with the deceased that might have satisfied the undesigned and unexpected requirement under Richardson.

Mesmer knew he was responding to a suicide at an address where he knew the homeowner. On this record, nothing about the events of February 14, 2016, fell outside the scope of Mesmer's general duties as a police officer. Given the totality of the circumstances, it was not unreasonable for Mesmer to anticipate the aftermath of M.H.'s suicide.

On this record, we are satisfied there is ample credible evidence supporting the denial of Mesmer's application for ADR benefits and the Board's decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION