11 A.3d 864

OCEANSIDE CHARTER SCHOOL, PETITIONER–APPELLANT, v. NEW JERSEY STATE DEPARTMENT OF EDUCATION OFFICE OF COMPLIANCE INVESTIGATION, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 30, 2010—Decided January 14, 2011.

2

Before Judges CARCHMAN, MESSANO and WAUGH.

*Cooper, Levenson, April, Niedelman & Wagenheim, P.A.*, attorneys for appellant (*Amy L. Houck* and *Diana G. Caiafa*, on the brief).

*Paula T. Dow*, Attorney General, attorney for respondent (*Melissa H. Raksa*, Assistant Attorney General, of counsel; *Joyce D. Williams*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

CARCHMAN, P.J.A.D.

On this appeal, we address the question of a grant recipient's responsibility to return federal grant funds when the recipient fails to comply with certain provisions of the Public School Contracts Law (PSCL), *N.J.S.A.* 18A:18A–4 and *N.J.S.A.* 18A:18A–5. Here, respondent Department of Education (DOE) ordered appellant Oceanside Charter School (OCS or appellant) to repay $354,765.04 in grant funds. We affirm.

The issue arises in the following factual context. On May 1, 2002, DOE issued a Notice of Grant Opportunity (NGO) for a federally-funded School Renovation Grant Program. The grant was structured to provide for the award of federal grants to be administered by DOE. The program was designed to aid schools with a high percentage of low-income students in completing urgently needed school facilities projects, and to ensure that students were "educated in healthy, safe, compliant, and otherwise adequate school [facilities]." The NGO explained that, "the project must be limited to a single school building; it must not be dependent upon any other project for its completeness." The School Renovation Grant Program expressly prohibited the use of the funds for "construction of a new facility."

OCS, located in Atlantic City, applied for four Renovation Grants from DOE to assist with, as described in the grant application, increased lease payments, an "upfront" equity payment, installation of a fire and alarm suppression system and payment for design and construction documents' fees. Each of OCS's applications stated that it requested grant funding to "assist in the comprehensive renovation of 53,000 square feet of leased space." The applications also described the project as a "retrofitting" and "renovating" of the shell of the Second Baptist Church (the Church) in Atlantic City. In its grant applications, OCS explained,

Oceanside Charter School will address the needs stated above by entering into a long term lease agreement for a 53,000 square foot facility that *is* across the street from its current location. It is the school's intention to vacate the current modular campus and relocate [to] this facility. The property, owned by 2nd Baptist Church,

*encompasses* approximately 148,000 square feet. . . . Of the 148,000 square feet, the church's current program *occupies* only 85,000 square feet of space. The remaining 63,000 square feet *is unoccupied, un-renovated open space* . . . . However, with the assistance of the New Jersey Department of Education Facility Renovation Grant Program, our intention is to renovate this facility into a 53,000 square foot healthy, safe and compliant school facility.

[ (Emphasis added).]

On November 13, 2002, DOE awarded four grants to OCS totaling $1,883,840 in federal funding. As a condition of the grant agreements, the PSCL, *N.J.S.A.* 18A:18A–1 to –59, was incorporated by reference in its entirety. The agreements also incorporated a provision stating that failure to comply with such laws "shall. be grounds for termination of this agreement."

The PSCL requires publicly advertised bidding for contracts exceeding the bid threshold. *N.J.S.A.* 18A:18A–4. However, *N.J.S.A.* 18A:18A–5 contains exceptions to the publicly advertised bidding requirement for professional services and extraordinary unspecifiable services (EUS).

The grant agreements also established a deadline for the completion of the projects. The deadline for the use of the grant funds was initially August 2004, but was then extended to December 2005. In November 2005, DOE determined that OCS had not started any renovations. DOE then visited the "renovation" site and observed that no building existed.

Ultimately DOE learned that on June 1, 2002, OCS had entered into what it describes as a "creative partnership" with the Church.

Pursuant to this agreement, the Church was to construct a shell of a building, which it would lease to OCS. Then OCS would use grant funding to "renovate" the building. OCS's retrofitting of the building was "wholly dependent upon the Church constructing that building." The Church never constructed the building and no public notice was given of the exemption.

After learning that no building existed on the property, DOE advised OCS that it would recoup any expenditures made in violation of the grant agreements. DOE sought to recoup these funds, because according to Alan Oleksiak, the contract officer in

DOE's Office of Grant Management, federal funding awarded for projects that were not completed or did not comply with the grant agreement must be returned to the federal government. DOE, through its Office of Compliance, commenced an investigation reviewing OCS's expenditure reports to determine whether OCS violated the terms of the grant agreements and applicable laws.

The investigation revealed that by board resolution on August 17, 2004, OCS awarded a contract to Century Builders Inc. (CBI) for design services without advertising the project for public bidding or including a provision indicating that OCS relied on an exemption to the PSCL and publishing a public notice to that effect. The payment to CBI totaled $299,287.

The investigation also revealed that OCS awarded a contract to an entity identified as "7group" for "green" consulting services. This contract was not advertised for public bidding, and the resolution did not contain a provision explaining that OCS relied on an exception to the public bidding requirement. OCS paid 7group $55,478.04 for its services.

DOE concluded that both of these contracts violated the PSCL, specifically *N.J.S.A.* 18A:18A-4, because they were not advertised for public bidding.

OCS appealed DOE's findings and ultimately, the matter was transferred to the Office of Administrative Law (OAL) for a hearing. The Administrative Law Judge (ALJ) concluded that OCS violated *N.J.S.A.* 18A:18A-5 because OCS failed to comply with the procedures required to claim an exception to the PSCL. He dismissed the appeal, and ordered OCS to reimburse the $354,765.04 in grant funds that had been expended in violation of the statute.

The Commissioner adopted the ALJ's decision and ordered full repayment. She concluded that a full refund of the grant money was not too harsh a penalty because OCS's grant applications were misleading. In her decision, the Commissioner concluded:

Petitioner applied for federal monies earmarked for school rehabilitation. The grant solicitations clearly stated that new construction was not to be undertaken with the funds, but petitioner applied for same, knowing that they would be used for the design and construction of buildings and facilities that did not yet exist. Further, the submissions made by petitioner to the Department of Education (DOE), used language that veiled the fact that the project was new construction. Indeed, Petitioner's Exhibit P-22 indicates that until December 2005, three years after the grant awards, the DOE was under the impression that the funds given to petitioner were to 'retrofit' a preexisting building.

It is undisputed that petitioner failed to follow the steps in New Jersey's school contract laws that are designed to assure fair public contracting.[1] The failure to follow public bidding requirements must then be viewed against the backdrop of a misleading grant application, which resulted in the expenditure of federal funds for a noncompliant purpose, and the ultimate waste of federal money in connection with a badly implemented and ultimately unsuccessful venture.

This appeal followed.

On appeal, appellant asserts that the contracts were for professional or extraordinary unspecifiable services and were exempt from the PSCL notification requirements under *N.J.S.A.* 18A:18A-5. In addition, appellant claims that the Commissioner failed to consider the legislative intent and public policy of the PSCL. Finally, it argues that the decision violates the students' rights to a free and appropriate public education.

## I.

We first address our standard of review. We will not overturn a final decision of an administrative agency "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence." *In re Carter,* 191 *N.J.* 474, 482, 924 *A.*2d 525 (2007) (quoting *Campbell v. Dep't of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963)). We will affirm a decision of DOE if it is supported by the evidence, even if we may question the wisdom of the decision or would have

---

[1] As stated above, one of the firms that appellant retained—CBI—is not licensed to provide architectural services in New Jersey and had been chosen by Second Baptist Church, a private entity to whom appellant was making publically financed commitments without a formal agreement.

reached a different result. *Campbell v. N.J. Racing Comm'n*, 169 *N.J.* 579, 587, 781 *A.*2d 1035 (2001).

Furthermore, a strong presumption of reasonableness attaches to an agency decision. *In re Carroll*, 339 *N.J.Super.* 429, 437, 772 *A.*2d 45 (App.Div.), *certif. denied*, 170 *N.J.* 85, 784 *A.*2d 718 (2001). With respect to factual findings, the findings of an ALJ "are considered binding on appeal, when supported by adequate, substantial and credible evidence." *In re Taylor*, 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999) (quoting *Rova Farms Resort Inc. v. Investors Ins. Co.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974)).

"The choice of accepting or rejecting testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." *In re Application of Howard Sav. Bank*, 143 *N.J.Super.* 1, 9, 362 *A.*2d 592 (App.Div.1976) (citations omitted). We will affirm if we find that the evidence and the inferences to be drawn therefrom support DOE's findings. *N.J. Racing Comm'n.*, *supra*, 169 *N.J.* at 587, 781 *A.*2d 1035 (citing *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 588, 538 *A.*2d 794 (1988)).

When we review an "agency's interpretation of statutes within its scope of authority . . . , we afford the agency great deference." *N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric.*, 196 *N.J.* 366, 385, 955 *A.*2d 886 (2008) (citing *In re Freshwater Wetlands Prot. Act Rules*, 180 *N.J.* 478, 489, 852 *A.*2d 1083 (2004)). The Supreme Court has noted that "[s]uch deference is appropriate because it recognizes that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are particularly well equipped to read . . . and to evaluate the factual and technical issues that . . . rulemaking would invite." *Ibid.* (internal quotation marks and citations omitted).

## II.

The PSCL provides the statutory framework for the expenditure of public funds on behalf of a board of education. *N.J.S.A.*

18A:18A–1. The grant agreement incorporated the PSCL, and expenditures made by OCS were subject to the strictures imposed by that statute.

The PSCL requires that a public school contract "for the provision or performance of any goods or services, the cost of which in the aggregate exceeds the bid threshold,[2] shall be awarded only by resolution of the board of education to the lowest responsible bidder after public advertising for bids and bidding therefor...." *N.J.S.A.* 18A:18A–4.

*N.J.S.A.* 18A:18A–5 contains two exceptions to the public bidding requirement. *N.J.S.A.* 18A:18A–5 provides that,

Any contract, the amount of which exceeds the bid threshold, shall be negotiated and awarded by the board of education by resolution at a public meeting without public advertising for bids and bidding therefor if

a. The subject matter thereof consists of:

(1) Professional services. The board of education shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be printed once, in an official newspaper, a brief notice stating the nature, duration, service and amount of the contract, and that the resolution and contract are on file and available for public inspection in the office of the board of education;

(2) Extraordinary unspecifiable services which cannot reasonably be described by written specifications. The application of this exception as to extraordinary unspecifiable services shall be construed narrowly in favor of open competitive bidding where possible and the Director of the Division of Local Government Services in the Department of Community Affairs is authorized to establish rules and regulations after consultation with the Commissioner of Education limiting its use in accordance with the intention herein expressed; and the board of education shall in each instance state supporting reasons for its action in the resolution awarding the contract for extraordinary unspecifiable services and shall forthwith cause to be printed, in the manner set forth in paragraph (1) of this subsection, a brief notice of the award of such contract....

*N.J.S.A.* 18A:18A–46.1 specifies the penalty for a violation of the EUS exception to the public bidding requirement. *N.J.S.A.* 18A:18A–46.1 provides that:

---

[2] The parties do not dispute that at the time the grant agreements were executed, the threshold was $17,500. *N.J.S.A.* 18A:18A–3.

a. Notwithstanding any law to the contrary ... the Commissioner of Education shall not withhold State funds from any school district because of any act or omission by the district which the commissioner determines to have been taken or permitted to occur in violation of the extraordinary unspecifiable services exception to the requirements for public advertisement and bidding as set forth in *N.J.S.* 18A:18A–5, unless the commissioner determines that: (1) the act or omission was the result of any collusion between any officer or employee of the district and any contract vendor; or (2) the act or omission was prompted by an intent on the part of any officer or employee of the district to evade the public advertisement and bidding requirements of the "Public School Contracts Law" ...; or (3) a prior act or omission resulted in a withholding of State funds or a remission of State funds due to a violation of the extraordinary unspecifiable services exception to the requirements for public advertisement and bidding as set forth in *N.J.S.* 18A:18A–5.

b. If the commissioner determines that the violation was caused by negligence and none of the provisions in paragraph (3) in subsection a. are met, the amount of State funds withheld shall not exceed 10% of the contract amount ... or $25,000, whichever is less.

The Supreme Court has explained that, "[b]idding statutes are for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good." *George Harms Constr. Co. v. N.J. Tpk. Auth.*, 137 *N.J.* 8, 36, 644 *A.*2d 76 (1994) (quoting *Terminal Constr. Corp. v. Atlantic County Sewerage Auth.*, 67 *N.J.* 403, 409–10, 341 *A.*2d 327 (1975)). The purpose of bidding statutes is to "guard against favoritism, improvidence, extravagance and corruption." *M.J. Paquet v. N.J. Dep't of Transp.*, 171 *N.J.* 378, 386, 794 *A.*2d 141 (2002) (citations omitted). Adherence to the bidding laws is paramount and reflects primary concern for the public good. The statutes require rigid adherence by the courts in interpreting its terms. *Hall Constr. Co., Inc. v. N.J. Sports and Exposition Auth.*, 295 *N.J.Super.* 629, 635, 685 *A.*2d 983 (App.Div.1996).

The ALJ concluded that OCS violated *N.J.S.A.* 18A:18A–5. He explained,

As I see it, it does not matter whether the contracts in question deal with either professional services or extraordinary unspecifiable services because Oceanside's Board of Trustees,[3] in its resolutions awarding the contracts, failed to comply with

---

[3] For purposes of interpreting the PSCL, appellant's Board of Trustees is the equivalent of a board of education with the same obligations as imposed on a board of education.

the requirements of *N.J.S.A.* 18A:18A–5. If Oceanside intended to award either of the contracts as professional services pursuant to *N.J.S.A.* 18A:18A–5(a)(1), it was required to declare in the resolution awarding the contract that it was awarding the contract for professional services and state supporting reasons for its action and forthwith cause to be printed a brief notice of the contract award in an official newspaper. Oceanside failed to comply with these requirements.

In the alternative, if Oceanside intended to award either of the contracts as extraordinary unspecifiable services pursuant to *N.J.S.A.* 18A:18A–5(a)(2), it was required to declare in the resolution awarding the contract that it was doing so for services which cannot reasonably be described by written specifications and, in each instance, state supporting reasons for its action. It was also required to forthwith cause to be printed a brief notice of the contract award in an official newspaper. Oceanside failed to comply with these requirements.

. . . .

Therefore, I conclude that Oceanside's failure to comply with those requirements is fatal to any claim that the contracts in question were awarded pursuant to either of these exceptions to the Public School Contracts Law. I further conclude that the contracts awarded by Oceanside to Century Builders and to the 7group failed to compl[y] with the requirements of the Public School Contracts Law as required by the terms of the grants.

OCS argues that the ALJ failed to consider "whether the contracts awarded to CBI and 7group were for Professional Services and/or EUS." It asserts that the ALJ should have decided this issue because this was the "entire basis for awarding the contracts to CBI and 7group without publicly bidding same. . . . [A]ll parties believed that the contracts were for professional and/or EUS, exempt from the public notification requirements of the PSCL." According to OCS, it "did not realize it had to declare anything further in its Resolution to bypass the public bidding requirement" and its failure to conform to the requirements of *N.J.S.A.* 18A:18A–5(a)(1),(2) was an "honest, technical mistake" and "de minimis." Finally, OCS asserts that it "was a victim of the Church's lost opportunity to develop its land and building, of which OCS had no control[,]" and that DOE "should have, and arguably could have, asked the Church for the reimbursed funds pursuant to Section 3.4 of the NGO, which provided that where the leased charter school facility changes use, the lessor [here the church] must remit payment of the expended funds." We conclude that these arguments are without merit.

■ At no time did OCS comply with the requirements of *N.J.S.A.* 18A:18A–5(a)(1),(2). These statutes mandate that when a board of education seeks to award a contract under the professional services or EUS exceptions to the public bidding requirement, the board of education has the responsibility to establish the reasons for its action in a resolution awarding the contract and print a notice stating the nature, duration, service and amount of the contract in an official newspaper. OCS failed to comply, and the award of this grant was contingent on OCS's compliance with the PSCL. As the grant agreements incorporated the PSCL, failure to follow the PSCL is grounds for termination of the agreement.

■ Furthermore, appellant asserts that under Section 3.4 of the NGO, the DOE's Office of Compliance should require the church to remit the funds because the church "changed use." This argument is also without merit. Section 3.4 states that, "[i]f a leased charter school facility changes use for other than charter school utilization and is funded by a federal School Renovation Grant, the lessor must repay the State for the amount of awarded federal School Renovation Grant." The application of this provision is problematic as OCS and the Church never executed a lease agreement. The church was not a "lessor" for the purposes of this provision.

The record supports the Commissioner's conclusion that OCS violated the terms of the grant by conditioning its rehabilitation efforts on the construction of a facility that did not yet even exist, and violated the PSCL by failing to advertise that the bid was awarded under the professional services exception to public bidding laws.

Appellant further asserts that although CBI was not prequalified with Business Registration Certificates at the time it was retained, there was no statutory requirement for any such certificate at that time, and it should not have factored into the ALJ's decision. The difficulty with this argument is that the record is devoid of any indication that CBI's lack of a Business Registration Certificate factored into the ALJ's decision. The ALJ determined

that OCS failed to meet the statutory requirements of *N.J.S.A.* 18A:18A–5 because it did not declare in the resolution awarding the contract that it was doing so for EUS or professional services, and failed to print a notice of the contract award in an official newspaper. There is no mention of Business Registration Certificates in the ALJ's decision.

OCS also argues that because its failure to comply with *N.J.S.A.* 18A:18A–5 was negligent, rather than deliberate, *N.J.S.A.* 18A:18A–46.1 and the unreported administrative decision in *Lakewood Township Bd. of Educ. v. New Jersey Dep't of Educ.*, 2000 WL 194258, 2000 N.J.AGEN LEXIS 36 (N.J.Adm.2000) apply here. In Lakewood, the local board of education complied with the procedural requirements of *N.J.S.A.* 18A:18A–5 in awarding a contract for EUS. *Lakewood, supra,* 2000 WL 194258, 2000 N.J.AGEN LEXIS 36 at 10–11. However, the ALJ and Commissioner determined that the contract was not exempt from public bidding as a contract for EUS. *Id.,* 2000 WL 194258, 2000 N.J.AGEN LEXIS 36 at 6. Ultimately, the school board was not obligated to return the State Aid under *N.J.S.A.* 18A:18A–46.1(a) because the Commissioner concluded there was no collusion, act or omission prompted by an intent to evade the PSCL or prior violation of the EUS exception. *Id.,* 2000 WL 194258, 2000 N.J.AGEN LEXIS 36 at 21. OCS asserts that *N.J.S.A.* 18A:18A–46.1 and *Lakewood* apply to this case, and OCS should only have to return $25,000 of the federal funds.

In concluding that *N.J.S.A.* 18A:18A–46.1 and *Lakewood* do not apply to the present case, the ALJ explained:

First, Oceanside never declared that any of the contracts in question were exempt from bidding under the extraordinary unspecifiable services exception. In addition, there was no act or omission by Oceanside in this case that can be determined to have been taken or permitted to occur in violation of the extraordinary unspecifiable services exception set forth in *N.J.S.A.* 18A:18A–5. Finally, the funding source for the project which is the subject of this case is not State Aid or other State funds, but are federal funds to which *N.J.S.A.* 18A:18A–46.1 does not apply.

In adopting the ALJ's decision, the Commissioner made a critical observation when she explained that the "failure to follow

public bidding requirements must then be viewed against the backdrop of a misleading grant application, which resulted in the expenditure of federal funds for a noncompliant purpose, and the ultimate waste of federal money in connection with a badly implemented and ultimately unsuccessful venture." Her conclusion was warranted. In assessing whether OCS's conduct was mere negligence or something more, context becomes relevant. Her conclusions were supported by the record here.

OCS further argues that the funds in question should not be considered federal funds because DOE was in control of the funds at all relevant periods, and OCS submitted its budget to DOE for approval. We disagree.

As explained in the NGO, this program was one-hundred percent federally funded and the funds were to be distributed consistent with the requirements of the NGO. DOE is responsible for remitting to the federal government any funds which have not been "dutifully and legally" expended. DOE does not have full control of the funds, but rather acts as a conduit in an administrative capacity for the purposes of distribution and here, recouping repayment.

We likewise reject OCS's argument that it is not responsible for damages as *N.J.S.A.* 18A:18A–46.1 eliminates the necessity for repayment of State funds for any "act or omission which the commissioner determines to have been taken or permitted to occur in violation of" the EUS exception. Here, OCS never sought to invoke the EUS exception but, more importantly, the funds in question were federal funds administered by the State, not State funds. The funds are due and owing to the federal government, not a recoupment under *N.J.S.A.* 18A:18A–46.1. OCS is not entitled to the benefit of this statute.

III.

OCS argues that the ALJ and Commissioner "failed to uphold the public policy behind the PSCL, and its sections limiting

the Commissioner's ability to withhold and/or direct remittance of grant funds." OCS explains that the public policy of this State is to "encourage and facilitate the development of charter schools" and that the Commissioner's failure to comply with the statute limiting the reimbursement of grant funds goes against this policy. OCS further argues that "[i]f the ALJ's and the Commissioner's decisions stand, . . . OCS and its students would be penalized for attempting to better their school, due to what was otherwise an event totally beyond their control i.e., the Church reneging on its agreement to purchase land and to construct a building."

DOE challenges OCS's argument and asserts that OCS was aware that these grants could only be used for rehabilitation projects, not new construction projects, but OCS still submitted four applications for grants to rehabilitate buildings that did not exist. DOE presents the compelling countervailing policy argument that the Department must have the authority to recover aid improperly received by local school districts and charter schools when an exemption to the bidding laws is not properly invoked. Otherwise each district would have a "free pass to award contracts, disregard the express language of the PSCL, and claim immunity from having to repay the amount improperly expended." Furthermore, DOE asserts that although it is unfortunate that repayment of the funds would come from the school's operating budget, OCS's misleading grant application diverted funds from other needy charter schools that face the same challenges as OCS. The Commissioner further explains that the issue is not about funding for OCS, it is about OCS's failure to follow the PSCL's requirements.

OCS failed to comply with the requirements of *N.J.S.A.* 18A:18A-4 and *N.J.S.A.* 18A:18A-5. This was a violation of the grant agreement. The grant funding was provided by the federal government, and ultimately the State will have to repay these funds to the federal government because they were used in violation of the Grant Agreement. OCS must bear the burden of repaying these funds—not the taxpayers.

Furthering this policy argument and relying on *In re Upper Freehold Regional School District*, 86 *N.J.* 265, 430 *A.*2d 905 (1981) and *Abbott v. Burke*, 100 *N.J.* 269, 495 *A.*2d 376 (1985), OCS asserts that the ALJ and Commissioner should have "supported OCS's attempt to procure updated educational facilities meant to secure the health, safety and welfare of OCS's students by finding that OCS did not have to remit the grant funds considering OCS was exercising the constitutional rights of its students to be educated in the safest manner possible." OCS further argues that its goal was the "betterment of the education to its students" and this was not possible "because of the church's inability to complete its part of the project." OCS explains that the "remuneration ordered by the ALJ and Commissioner will deprive each student at OCS a full and fair opportunity to an education equal to that of the other students in New Jersey" because reimbursement to DOE will come directly from OCS's operation budget.

The New Jersey Constitution guarantees that "[t]he Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the state between the ages of five and eighteen years." *N.J. Const.* art. 8, § IV, ¶ 1. However, OCS's reliance on *Freehold* and *Abbott* is misplaced. Although these cases validate the Commissioner's authority to direct funding to school districts and the needs of disadvantaged students, neither of these cases involve a school that misused grant funding.

Although OCS's goals are no doubt commendable, they do not provide a basis for the disregard of statutory requirements that are necessary for the betterment of the public. The failure here to comply with the bidding statutes is neither de minimis nor simply technical. The findings of the Commissioner that this rehabilitation grant was intended to be used for new construction, a circumstance precluded by the grant terms, was, in her words, "misleading" and "noncompliant." In assessing the equities of what transpired, we recognize that the students of OCS may be affected by the return of funds, however, this was a competitive

grant process. Presumably other schools serving needy and deserving students were deprived of grant funds because monies were awarded to OCS. These students are entitled to the same benefits as those at OCS.

We conclude that the Commissioner's decision ordering repayment of the funds was neither arbitrary nor capricious.

Affirmed.