**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0591-20

MICHAEL RUSSO,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted January 11, 2022 – Decided March 4, 2022

Before Judges Currier and Smith.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. x-xxx4954.

William J. Courtney, attorney for appellant (William J. Courtney and Laurie J. Bice, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Victoria G. Nilsson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant fell down several stairs and alleged he sustained an injury to his neck while working as the operations undersheriff in the Hunterdon County Sheriff's Office in November 2010. His application for accidental disability retirement benefits was denied by the Board of Trustees of the Public Employees' Retirement System (Board). After appeal and transfer to the Office of Administrative Law for a hearing, the Administrative Law Judge (ALJ) found appellant failed to demonstrate "he was totally and permanently physically disabled and incapable of performing the general duties of an operations undersheriff." The Board adopted the ALJ's decision. We affirm.

The issues presented by appellant for determination by the ALJ were: "(1) whether [appellant] is totally and permanently disabled from the performance of his duties as an undersheriff; and (2) whether his alleged disability directly resulted from the November 24, 2010[] incident."

During the hearing in 2019, appellant testified he worked as an undersheriff for four and a half years providing security to the Justice Center. His duties included "training [of other officers and with firearms], transport[ing] prisoners, [and] sometimes working security in a courtroom or at a metal detector." Although appellant was cleared to return to work on light duty in

December 2010 after his injury, he stated he was unable to perform any of his required job duties. Because the current sheriff was retiring at the end of her term in December 2010, appellant stated he sat "on [his] desk at the computer. The end of the term was near, and we just waited it out [un]til the end of the year." The then-sheriff testified that when appellant returned to work for the two weeks until her term ended, he was unable to perform his duties. The new sheriff did not retain appellant but hired another man as the operations undersheriff.

Appellant went to the emergency room two days after his fall. After an MRI was performed, he was released and cleared to return to work. In the years since his fall, appellant has treated with a number of health professionals including chiropractors, orthopedists, neurologists, and physical therapists.

During the hearing, appellant stated he continued to have pain in his neck and had a "low grade headache all the time." At the time, he was sixty-three years old and working at a security job.

Dr. Steven Nehmer, an orthopedic surgeon, testified on behalf of appellant. He examined appellant in December 2017. In preparing his report, he reviewed multiple medical records and an MRI of the cervical spine performed in July 2013. He testified that the MRI "showed multiple disc

A-0591-20

herniations in the neck, specifically at C3/4, C4/5, C5/6, and C7/T1. It showed a bulging disc at C6/7 and there were age-appropriate degenerative changes." Dr. Nehmer concluded the diagnoses were causally related to appellant's fall at work in 2010, his neck injury was permanent, and he was unable to perform the duties of an undersheriff.

Dr. Nehmer stated appellant mentioned he was in a car accident in either 1987 or 1989 in which he hurt his neck but had recovered from that injury and had no problems with his neck before the fall in 2010. Dr. Nehmer did not review the 2010 MRI done in the emergency room two days after appellant's fall.

The Board presented Dr. Richard Rosa, also an orthopedic surgeon, as its medical witness. Dr. Rosa examined appellant in May 2018. Appellant reported to Dr. Rosa that he had neck pain that radiated to his left upper arm and shoulder and decreased motion of the neck. Appellant also stated he had back pain that pre-existed his fall at work.

Dr. Rosa reviewed a copy of the 2013 MRI report and noted the scan revealed age-appropriate degeneration of the spine—arthritic changes common to people in their 30's and older. He stated: "It would be extremely rare not to see someone say in their . . . 50's or 60's that didn't have [arthritic changes in the

A-0591-20

spine]." He opined that the arthritis in the neck had developed over twenty to twenty-five years.

Dr. Rosa described his examination of appellant as "unremarkable" and concluded that "based on my review of the medical record and my evaluation that day, there was . . . no objective evidence for total and permanent disability in regard to the duties of the [appellant's] job."

The ALJ affirmed the Board's denial of accidental disability retirement benefits. The ALJ analyzed the factual record in detail and weighed the testimony of expert witnesses Dr. Nehmer and Dr. Rosa. The ALJ stated:

> [Appellant] offered the testimony and reports of Dr. Nehmer in support of his accidental disability claim. Dr. Nehmer did not treat or otherwise examine [appellant] at the time of the 2010 fall. Nehmer did not become involved in the case until approximately 2018. In forming his report and ultimate conclusion, Nehmer relied heavily on an MRI taken on July 16, 2013. This MRI was taken nearly three years after the date of [appellant's] work-related injury. Further, [appellant], himself testified that he did not seek immediate medical assistance at the time of the injury because it was the day before Thanksgiving. He testified that when he did seek medical care at a local emergency room on the Friday after Thanksgiving, he was released within a few hours. He references an MRI possibly being taken at the emergency room in 2010, but no corresponding MRI report was reviewed by Nehmer or available at the hearing. I, therefore, [conclude] that [appellant] has failed to prove by a preponderance of the credible

evidence that any disability is attributable to his 2010 work-related injury.

I further [conclude] that [appellant] has failed to prove by a preponderance of the credible evidence that he is totally and permanently disabled from the performance of his duties as an undersheriff. Dr. Nehmer examined [appellant] in anticipation of the hearing and testified to several disk herniations. He reviewed the job description of operations undersheriff and opined that [appellant] was not capable of performing the physical tasks of the job. However, Nehmer's opinion was based on an MRI taken approximately three years after the injury and a physical examination that occurred approximately eight years after the injury. I, therefore, [conclude] that Nehmer's opinion is not entirely credible based on this great lapse of time.

The Board subsequently adopted the ALJ's decision affirming the Board's denial of appellant's application for accidental disability retirement benefits.

Our review of an administrative agency action is limited. Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206 N.J. 14, 27 (2011). "We recognize that agencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Fireman's Ret. Sys., 198 N.J. 215, 223 (2009) (alteration in original) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)). Therefore, we will not "substitute [our] own judgment for the agency's, even though [we] might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence" in the record as a whole. In re Virtua-W. Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006) (citations omitted).

The factual "findings of an ALJ 'are considered binding on appeal, when supported by adequate, substantial and credible evidence.'" Oceanside Charter Sch. v. N.J. State Dep't of Educ., 418 N.J. Super. 1, 9 (App. Div. 2011) (quoting In re Taylor, 158 N.J. 644, 656 (1999)). The review of an agency interpretation of law is de novo. Russo, 206 N.J. at 27.

Appellant contends on appeal that the Board's decision to deny his accidental retirement benefits application was arbitrary, capricious, and not supported by the evidence. We disagree.

A member of the Public Employees' Retirement System is entitled to accidental disability retirement benefits under N.J.S.A. 43:15A-43 if the

member "is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties . . . ." Our Supreme Court has stated that to receive accidental disability benefits, a claimant must prove:

1. that he is permanently and totally disabled;

2. as a direct result of a traumatic event that is:

a. identifiable as to time and place,

b. undesigned and unexpected, and

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Mount v. Bd. of Trs., Police and Fireman's Ret. Sys., 233 N.J. 402, 421 (2018) (quoting Richardson v. Bd. of Trs., Police and Fireman's Ret. Sys., 192 N.J. 189, 212-13 (2007)).]

In considering an application for accidental disability benefits, "[t]he polestar of the inquiry is whether, during the regular performance of his job, an

unexpected happening, not the result of preexisting disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Richardson, 192 N.J. at 214. A claimant has the burden of proving "direct result" by competent medical testimony. Id. at 194-95.

After properly considering both experts' testimony and opinions, the ALJ found appellant failed to meet his burden as to causation to qualify for accidental disability retirement benefits under the stringent requirements of Richardson and Mount. Dr. Nehmer relied on an MRI performed three years after the accident to support his opinion of causality. The MRI revealed multiple areas of degeneration, described by both experts as "age-appropriate" arthritic changes. Dr. Nehmer did not review the MRI taken at the emergency room two days after appellant's fall. We are satisfied the ALJ's decision that appellant did not meet his burden as to causality and the Board's subsequent adoption of it were based on the substantial, credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0591-20