**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2590-21

BRIAN HURLEY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM OF
NEW JERSEY,

     Respondent-Respondent.

_____

Submitted November 14, 2023 – Decided December 1, 2023

Before Judges Mayer and Paganelli.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx8095.

Feeley & LaRocca, LLC, and The Blanco Law Firm, LLC, attorneys for appellant (John D. Feeley and Pablo N. Blanco, of counsel and on the brief).

Nels J. Lauritzen, Senior Attorney, attorney for respondent (Juliana C. DeAngelis, Legal Counsel, on the brief).

PER CURIAM

Petitioner Brian Hurley appeals from a March 16, 2022 final agency decision of the Board of Trustees of the Police and Firemen's Retirement System (Board), denying him accidental disability retirement benefits. We affirm.

We recite the facts from the testimony presented to the Administrative Law Judge (ALJ) during a contested hearing.

On October 11, 2015, Hurley, an officer with the Atlantic City Police Department, was on patrol when his police vehicle was struck by another vehicle. After the accident, Hurley went to a local hospital and doctors at the hospital diagnosed him as suffering from post-concussive disorder and a traumatic brain injury. Hurley received physical therapy for his injuries through workmen's compensation. Hurley also treated with several worker's compensation doctors, including Dr. Dirk Skinner, a neurologist, and Dr. Gary Glass, a psychiatrist.

On September 27, 2018, Hurley applied to the Board for accidental disability retirement benefits based on the October 2015 accident. In a December 10, 2019 decision, the Board denied his request.

The Board found Hurley was "totally and permanently disabled" from the performance of his duties, and the event causing his disability was identifiable

as to time and place, undesigned and unexpected, and occurred during and as a result of his regular duties. However, the Board determined Hurley's disability was "the result of a pre-existing disease alone or a pre-existing disease that [was] aggravated or accelerated by the work effort." The Board further concluded the accident was not "objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury," because his disability "did not result from 'direct personal experience of a terrifying or horror-inducing event that involved actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person.'"

Hurley appealed the Board's decision, and the matter was transmitted to the Office of Administrative Law for a hearing. The ALJ assigned to the matter heard testimony from Hurley, his expert witnesses, Drs. Daniel Gollin and David Pilchman, and the expert witness for the Board, Dr. Richard Filippone.

Dr. Gollin, who qualified as an expert in the field of psychiatry, conducted an Independent Medical Examination (IME) of Hurley after the accident. According to Dr. Gollin, based on his interview with Hurley and review of Hurley's medical records, Hurley experienced headaches, confusion, memory loss, slow processing speeds, and a myriad of sensory issues—symptoms typical of a person suffering from post-concussive syndrome. Dr. Gollin noted Hurley

A-2590-21

did not receive additional psychiatric care even though such care was recommended by several doctors. During the interview, Dr. Gollin noted Hurley had difficulty verbalizing, displayed nervousness, irritability, and confusion, and spoke in a monotonous tone.

Dr. Gollin also reviewed several medical reports from different specialists as part of the IME. The doctor noted that Drs. Glass and Skinner reported Hurley was malingering, exaggerating, or lying regarding the extent of his psychiatric issues. Dr. Gollin disagreed with these findings by Drs. Glass and Skinner. He concluded Hurley suffered from post-concussive syndrome in addition to depressive disorder as a result of the accident.

Dr. Gollin admitted he did not review the reports rendered by Drs. Glass or Skinner prior to reaching his own conclusions. Rather, Dr. Gollin explained he relied on information provided in Dr. Pilchman's report. Based on the information that he reviewed, Dr. Gollin noted a "fairly strong consensus that there was post-concussive syndrome among a number of neurological professionals [who saw Hurley.]" Dr. Gollin testified "[Hurley] is totally and permanently disabled from doing police work as a result of his post-concussive syndrome and . . . the prognosis for recovery is very poor."

A-2590-21

Dr. Pilchman, who also testified on Hurley's behalf, was qualified as an expert in the field of psychology. Dr. Pilchman interviewed Hurley and reviewed his extensive medical records. As part of his examination, Dr. Pilchman noted Hurley had slow processing speed, appeared tense, nervous, and tearful, exhibited delayed responses, and gave vague answers to the doctor's questions. Dr. Pilchman reported Hurley displayed the following symptoms: somatization, obsessive compulsive components, sensitivity in interactions with others, depression, hostility, and anxiousness.

Additionally, Dr. Pilchman conducted a Personality Assessment Inventory test and a fitness-for-duty examination. Based on the results of these tests, Dr. Pilchman confirmed Hurley was disabled and had an eighty-three percent possibility of being unable to function safely as a police officer. Dr. Pilchman diagnosed Hurley as suffering from post-concussive disorder and major depression as a direct result of the October 2015 accident.

With respect to the other medical examiners, Dr. Pilchman noted that certain tests, such as the tests conducted by Dr. Skinner, were performed too soon after the accident to detect post-concussive symptoms and therefore some test results should have been invalidated. Dr. Pilchman disagreed with medical reports opining Hurley was malingering. Specifically, Dr. Pilchman believed

A-2590-21

the malingering findings by Dr. Glass may have been inaccurate given the breakdown in communication between Hurley and Dr. Glass.[1] Dr. Pilchman noted Hurley responded negatively to routine questions asked by Dr. Glass. According to Dr. Pilchman, this communication failure could have adversely affected Dr. Glass's findings.

Dr. Filippone, who was qualified as an expert in psychology, testified for the Board. Dr. Filippone reviewed Hurley's medical records, test results, and accident report. He also interviewed Hurley.

During the interview, Dr. Filippone noted Hurley gave odd or atypical answers. The doctor found Hurley's recitation of the facts surrounding the accident inconsistent with Hurley's description of the accident contained in other medical records.

The doctor also conducted two psychological tests as part of his evaluation. From the test results, Dr. Filippone concluded "[t]he tests were a self-report of symptoms of anxiety and depression" and Hurley's "scores were severe for both anxiety and depression."

---

[1] Hurley testified his relationship with Dr. Glass "did [not] start out very positively." Hurley found Dr. Glass to be "pompous," leading to a negative interaction with the doctor.

A-2590-21

Dr. Filippone found no "convincing evidence that [Hurley] suffered from persistent post-concussive syndrome." Dr. Filippone testified that "[ninety] percent of people with post-concussion syndrome are fully resolved within three months" and that a "small component of people with post-concussion syndrome . . . have mild residual problems but nothing as severe as the one shown by [Hurley]." Dr. Filippone explained someone with true post-concussive syndrome would "be motivated to go back to work . . . would [ ] want[ ] an honest appraisal of themsel[ves], . . . [and] would cooperate with treatment." While Hurley repeatedly insisted that he was impaired, Dr. Filippone testified Hurley declined to take medication to treat his conditions.

Dr. Filippone opined Hurley was malingering. He concluded Hurley suffered from Ganser syndrome, where a patient presents with severe problems absent any medical basis or exaggerates their symptoms and issues. Dr. Filippone testified Hurley also suffered from conversion disorder, a psychological mechanism wherein someone is convinced they lack certain mental faculties which cannot be explained by way of a medical evaluation. According to Dr. Filippone, Hurley had an authentic psychological disorder which surfaced after the accident but was not caused by the accident. Based on comments made by Hurley during the interview, Dr. Filippone attributed

7

Hurley's symptoms to events occurring before the October 2015 accident, including poor adjustment to his job and deep-seeded conflicts with his parents.

On cross-examination, Dr. Filippone was asked why he relied primarily on the findings in the medical reports from Dr. Mark Chelder and Dr. Glass since Dr. Filippone's conclusions were contrary to their conclusions. Dr. Filippone replied he relied on the information in those reports because they were the only "mental" doctors who evaluated Hurley around the time of the accident.

After reviewing the evidence and testimony, the ALJ found it was "undisputed that [Hurley] was involved [in] an auto accident while on patrol and sustained a mild concussion." Regarding Dr. Gollin, the ALJ noted the doctor relied heavily on Dr. Pilchman's interpretation of other medical records and did not personally review the medical records from Drs. Skinner or Glass prior to issuing his report. Dr. Gollin admitted he only reviewed those medical reports just prior to his testimony.

On the other hand, the ALJ found Dr. Filippone's testimony more persuasive. The ALJ gave greater weight to Dr. Filippone's testimony because "[h]is evaluation approach was sound and took into consideration all the medical professional opinions. His overall reasoning and/or basis in diagnosing [Hurley] with Ganser Syndrome and [c]onversion [d]isorder was supported by both his

8

own evaluation and that of other medical professionals and records reviewed." The ALJ further found that Dr. Filippone "credibly testified that [Hurley] suffered a mild head injury in 2015 and had what was considered mild post-concussion syndrome," and "his opinion persuasive [ ] that [Hurley's] concussion should not have produced the disabling mental condition that [he] was currently exhibiting." The ALJ further credited Dr. Filippone's testimony that the October 2015 accident provided Hurley "a vehicle that allowed [him] to resolve a set of emotional personal conflicts . . . which had roots before the accident."

Based on the testimony, the ALJ concluded the October 2015 accident was not the direct cause of Hurley's disability. The ALJ found Hurley "failed to present any credible evidence that the accident was objectively capable of causing the psychological/psychiatric injuries that he claims." The ALJ determined Hurley was "permanently and totally disabled from the performance of his duties but not as a result of a work-related traumatic incident—specifically the October [11], 2015 auto accident." Thus, the ALJ affirmed the Board's decision denying Hurley's request for accidental disability retirement benefits.

On March 16, 2022, the Board adopted the ALJ's January 25, 2022 initial decision.

On appeal, Hurley argues the ALJ erroneously required him to satisfy the test in Patterson v. Board of Trustees, Police & Firemen's Retirement System, 194 N.J. 29, 33 (2008), for entitlement to accidental disability retirement benefits.  He asserts his case involved both physical and mental injuries and the test pronounced in Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 192 (2007), governed.  He further claims his disability is the direct result of the October 2015 accident.  Additionally, Hurley asserts his expert witnesses were more credible than the Board's expert witness.

Our review of an agency determination is limited.  Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018).  An appellate court "may not substitute its own judgment for the agency's, even though the court might have reached a different result."  In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).  An administrative agency's determination "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).  Our review is limited to the following inquiries:

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. at 194).]

In reviewing an agency's decision, we "must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). However, we review an agency's interpretation of the law de novo. Russo, 206 N.J. at 27.

To establish entitlement to accidental disability retirement benefits, a member must prove:

1. that he is permanently and totally disabled;

2. as a direct result of a traumatic event that is

a. identifiable as to time and place,

b. undesigned and unexpected, and

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson, 192 N.J. at 212-13.]

With respect to causation, the alleged traumatic event must be "the essential significant or the substantial contributing cause of the resultant disability." Gerba v. Bd. of Trs., Pub. Empls. Ret. Sys., 83 N.J. 174, 186 (1980). Whether a member's disability is the direct result of a traumatic event is within the ambit of expert medical opinion. Korelnia v. Bd. of Trs., Pub. Empls. Ret. Sys., 83 N.J. 163, 171 (1980). In general, "[t]he credibility of the expert, and the weight to be accorded his or her testimony, is assessed by the trier of fact . . . ." State v. Frost, 242 N.J. Super. 601, 615 (App. Div. 1990).

Here, Hurley asserts the ALJ erred in applying the Patterson test. He argues Patterson is inapplicable in cases where the petitioner suffers both a

physical and mental injury. Caminiti v. Bd. of Trs., PFRS, 431 N.J. Super. 1, 14 (App. Div. 2013). Because Hurley alleged that he suffered both a physical and mental injury resulting from the October 2015 accident, the Patterson standard need not be considered.[2]

Even though Hurley need not satisfy the Patterson test, he must still satisfy the requirements of Richardson to succeed on his claim for accidental disability benefits. Russo, 206 N.J. at 32. Thus, Hurley needed to prove that his mental issues were the direct result of the October 2015 accident.

Here, the ALJ relied on Dr. Filippone's persuasive and credible testimony to conclude Hurley's mental issues were not the direct result of the October 2015 accident. Based on Hurley's responses to Dr. Filippone's interview questions, Dr. Filippone testified Hurley's mental issues were the result of a pre-existing condition–specifically, "deep seeded" conflicts with his parents and "poor adjustment to his job." Dr. Filippone explained Hurley "attempted to resolve a set of emotional personal conflicts [by] 'hunkering' down with a disabled concept of himself which had roots before the accident." Thus, the ALJ found

---

[2] In concluding Hurley's injuries were not the result of the October 2015 auto accident, the ALJ considered Hurley's claims under the Richardson and Patterson tests.

Hurley had a pre-existing condition and failed to satisfy the Richardson requirements for accidental disability retirement benefits.

While Hurley argues the medical opinion proffered by Dr. Filippone should be rejected because his opinion differed from the medical opinions offered by other medical experts, his argument goes to the weight to be accorded to his expert testimony. City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 491 (2010) (explaining the fact-finder has the role of assessing the credibility and weight to be given to expert testimony). The ALJ, as fact-finder, has significant discretion in accepting or rejecting an expert's opinion provided there is sufficient evidence in the record supporting such credibility determinations. Oceanside Charter Sch. v. N.J. State Dep't of Educ., 418 N.J. Super. 1, 9 (App. Div. 2011). Where a decision regarding an expert's testimony "is reasonably made[,] it is conclusive on appeal." In re Howard Sav. Bank, 143 N.J. Super. 1, 9 (App. Div. 1976).

Here, there was substantial credible evidence in the record supporting the ALJ's determination that Hurley's disability was not the direct result of the October 2015 accident. The ALJ relied on the testimony of Dr. Filippone after finding his testimony credible and supported by the evidence in the record. The ALJ found Dr. Filippone conducted an IME and thoroughly reviewed all medical

reports regarding Hurley's physical and mental condition. Based on his review of the medical records and physical examination of Hurley, Dr. Filippone opined, and the ALJ found, Hurley suffered a head injury in 2015 but his psychiatric symptoms were related to personal conflicts that pre-existed the car accident.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15