**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0264-23

DENEEN A. MATANI,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued March 12, 2025 – Decided June 2, 2025

Before Judges Currier and Paganelli.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx0276.

Stuart J. Alterman argued the cause for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman and Arthur J. Murray, on the briefs).

Thomas R. Hower argued the cause for respondent (Gebhardt & Kiefer, PC, attorneys; Leslie A. Parikh and Linda M. Brown, on the brief).

PER CURIAM

Petitioner appeals from defendant's, Board of Trustees of the Police and Firemen's Retirement System (the Board), August 18, 2023 final administrative determination denying her application for Accidental Disability Retirement Benefits (ADRB). Because petitioner has not demonstrated she was totally and permanently disabled from the particular incident, we affirm.

Petitioner's application for ADRB arises out of an incident that occurred in December 2012 when she was bitten by a dog while working as a police officer for the Atlantic City Police Department. She had been employed by the Department since 1992.

On December 17, 2012, petitioner was "dispatched to [a] call for crowd control for [an] officer involved shooting." She described it as a "riotous situation." She explained that as she moved out of the way of a K-9 handler, the K-9 "dog latched onto [her] arm and [she] went down to the ground and wiggled underneath the car with the dog on [her] arm." The bite resulted in five puncture wounds to her right forearm and wrist. She was hospitalized for several days.

Petitioner returned to work on light duty at the end of February 2013 and returned to full duty, without restrictions, in March. Petitioner was promoted to sergeant in 2014. Petitioner testified she stopped working again in December

2014 because her doctor "put [her] out on stress." She said the stress arose from the dog bite but also from personal issues including divorce proceedings.

Petitioner was recertified in the use of firearms approximately four times between March 2013 and December 2014. She testified an officer must be certified to use a firearm with both hands. Petitioner also stated she owns a personal firearm—a semi-automatic pistol.

The record is not clear but there are references to petitioner returning to work on a light or restricted duty at some point. Her last day of work was August 31, 2016.

In July 2016, petitioner filed an application for ADRB arising from the December 17, 2012 incident. In May 2017, the Medical Review Board (MRB) found petitioner was "totally and permanently disabled and [wa]s not able to perform the duties of [her] job." The MRB found the disability was "not a direct result of the [December 17, 2012] accident[]," but rather petitioner was "totally and permanently disabled due to generalized anxiety disorder." The MRB based its decision on an "[i]ndependent [m]edical [e]xamination," "[m]edical records submitted by the member or employer," and "[t]he member's current job description or title."

A-0264-23

Thereafter, the Board denied petitioner's application for ADRB. The Board determined petitioner's "psychological disability is not a direct result of the incident described; rather . . . [it] is the result of numerous personal, family, and work issues." The Board granted petitioner ordinary disability retirement benefits (ORDB) "retroactive to [her] retirement effective date of September 1, 2016."

Following petitioner's appeal, a hearing was conducted before an Administrative Law Judge (ALJ) over several days in February 2022. Petitioner presented Dr. Jeffrey Boxman as her medical expert witness.

Dr. Boxman testified he is a neurologist, licensed in New Jersey in 1993, and in private practice since 1998. He stated he first saw petitioner in June 2015. Petitioner complained of weakness and pain in her "distal [right] forearm, the [right] wrist and the medial fingers."

Dr. Boxman testified that the results of a nerve conduction study and electromyography (EMG) were "abnormal." However, when he conducted the testing again in January 2016, the results were "normal." He explained "this time there was normalcy of the . . . ulnar dorsal cutaneous nerve."

Dr. Boxman stated that he conducted a third EMG, at the request of petitioner's counsel in 2018. The testing showed an ulnar dorsal cutaneous

4

branch nerve injury and signs of carpal tunnel. He explained carpal tunnel is a common condition in a person's wrist and fingers "depending on [a person's] occupation or just some medical issues." Dr. Boxman's diagnosis was that the dog bite injured the muscle that controls the fingers and hand. He based his causality opinion on the history provided to him.

Dr. Boxman also found petitioner has a tremor resulting from the dog bite. He did not believe petitioner had "any chance of . . . regaining any further improvement." He found she was totally and permanently disabled from being a law enforcement officer.

Dr. Steven Lomazow testified for the Board. Dr. Lomazow is board certified in neurology and has been in private practice for forty-two years.

Dr. Lomazow stated he examined petitioner in January 2017, and reviewed records from numerous physicians as well as the EMG testing. The doctor testified that petitioner complained to him of hypertension, migraine, cramping of her hand and inability to feel her hand. He examined her right hand and made no organic findings. There was no atrophy or muscular abnormalities. Dr. Lomazow stated petitioner had "psychologically induced findings of alleged abnormalities with her hand." Dr. Lomazow concluded that petitioner was not disabled.

A-0264-23

Dr. Lomazow reviewed medical records from Dr. Dirk Skinner, a neurologist, from March 2013. He noted Dr. Skinner also found that there was nothing organic or "physiologic due to some sort of injury." Dr. Skinner cleared petitioner to return to work on March 13, 2013.

When questioned about Dr. Boxman's readings of the EMG testing, Dr. Lomazow stated:

> [Dr.] Boxman alleged there's a right median nerve entrapment. I don't see that on his worksheet. I don't know where he got that from. And this is the only time that anybody's ever mentioned a median issue. And there is no median issue here. . . . I have no idea why there's a disparity between the worksheet, which is normal and his allegation of a mild median problem. But there's no evidence this woman has any problem with her median nerve.

Dr. Lomazow further testified that the EMG results did not support Dr. Boxman's conclusion that petitioner is disabled. The doctor said there was no objective medical evidence of a disability to prevent petitioner from performing her job as a police officer. Dr. Lomazow also did not see a tremor.

The ALJ issued his initial decision on July 18, 2023. He found petitioner was an "honest witness," although she was "somewhat evasive on cross-examination." The ALJ adopted and accepted Dr. Lomazow's opinion that petitioner was not permanently and totally disabled. He found Dr. Lomazow's

6

opinion was more persuasive than that proffered by Dr. Boxman. The ALJ stated:

> Petitioner did not stop working in 2014 as a result of neurological diagnoses, but rather stopped working at the direction of her primary care doctor based on issues she was having with stress; petitioner is currently receiving ODRB based on stress; petitioner passed all her firearms tests and received all her firearms certifications, petitioner continued to own a personal weapon after ending h[er] employment with Atlantic City.
>
> There was no right median nerve entrapment; there were no positive neurological findings due to an injury to petitioner's right hand, there was no muscle atrophy in petitioner's right hand nor any muscle abnormalities; there was no defective sensation in the cutaneous distribution of the ulnar on the right side, there were no relevant abnormalities in petitioner's ulnar nerve; there was no significant right ulnar mononeuropathy, motor neuropathy or neurological impairment, petitioner's symptoms were non-physiologic.

The ALJ found that petitioner "failed to meet, by a preponderance of credible evidence, her burden in demonstrating that the [i]ncident of December 1[7], 201[2], caused her to be totally and permanently neurologically disabled from being able to perform her assigned job duties as an Atlantic City Police Sergeant."

7

On August 18, 2023, the Board notified petitioner that it adopted the ALJ's decision, affirming the Board's denial of petitioner's application for ADRB.

On appeal, petitioner alleges she is entitled to ADRB because the ALJ erred in accepting Dr. Lomazow's net opinion over that of Dr. Boxman and the ALJ was mistaken that petitioner did not file a workers' compensation claim for physical injuries after the 2012 dog bite incident.

Our review of quasi-judicial agency determinations is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "[C]ourts afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007). We are "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

We review an agency decision "under an arbitrary and capricious standard," Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019), meaning we will sustain decisions "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Saccone v. Bd. of Trs,. Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14,

27 (2011)). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

The court's role in reviewing an administrative appeal is to determine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto. Grp., Inc., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

We begin with petitioner's contentions regarding the ALJ's errors. In his initial decision, the ALJ recounted petitioner's testimony and noted she "filed a workers' compensation claim for injuries to her right forearm and wrist." Later in the opinion, the ALJ stated petitioner "did not file for workers' compensation due to physical injuries, but rather emotional issues, and ultimately returned to work and was promoted." This was a misstatement. Nevertheless, it is clear the ALJ was aware of the basis for the workers' compensation claim as referenced above. Petitioner was questioned about the workers' compensation petition

9

several times and she reiterated the claim was solely for her physical injuries. There is no reason to remand, as petitioner suggests, to correct the record.

In her closing brief submitted to the ALJ, petitioner raised for the first time that Dr. Lomazow's opinion was a net opinion and inadmissible. The ALJ stated:

> Petitioner's first point and primary argument was that Dr. Lomazow's opinion should be ignored for being a net opinion. I did not find this to be a compelling argument. Dr. Lomazow did not merely issue conclusions so as to constitute a net opinion. Rather, he was admitted as an expert in neurology, based on his Curriculum Vitae . . . , and pursuant to a brief voir dire on the second hearing date, and therefore demonstrated sufficient specific scientific expertise to offer expert opinions and conclusions on neurologic issues. Further, he conducted a neurological examination on January 13, 2017, which he described as a thirty-minute physical examination where he attempted to determine the mental state of the patient, reviewed twenty-seven neurological bullet points, tested twelve nerves that go to the brain, checked the patient's reflexes, and conducted an examination of petitioner's right hand. Additionally, Dr. Lomazow reviewed petitioner's medical records, including three EMG/nerve conduction studies from Dr. Boxman, and the reports of [additional doctors]. I therefore FIND that the conclusions set forth in Dr. Lomazow's report . . . were not net opinions.

"[N.J.R.E.] 703 addresses the 'bases of opinion testimony by experts.'" State v. Townsend, 186 N.J. 473, 494 (2006) (quoting R. 703). Expert opinion is allowed if it is based on

> facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject.
>
> [Ibid. (quoting Biunno, Weisbard & Zegas, N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 703 (2005)).]

"The corollary of [Rule 703] is the net opinion rule, which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Ibid. "[T]he net opinion rule 'requires an expert to give the why and wherefore of his or her opinion, rather than a mere conclusion.'" Ibid. (quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002)).

Dr. Lomazow is a board-certified neurologist. He performed his own neurological evaluation of petitioner in addition to reviewing the records of multiple other doctors and the diagnostic testing. Dr. Lomazow explained the reasons supporting his conclusion that petitioner did not suffer a neurological injury in both his written report and during his testimony. Dr. Lomazow's expert

11

testimony was not a net opinion and the ALJ did not err in allowing Dr. Lomazow to testify as an expert witness.

We similarly discern no reason to disturb the ALJ's determination, adopted by the Board, to accept Dr. Lomazow's opinion over that of Dr. Boxman.

"[T]he [factual] findings of an ALJ 'are considered binding on appeal when supported by adequate, substantial and credible evidence.'" Oceanside Charter Sch. v. N.J. State Dep't of Educ. Off. of Compliance Investigation, 418 N.J. Super. 1, 9 (App. Div. 2011) (quoting In re Taylor, 158 N.J. at 656). "[T]he choice of accepting or rejecting the testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Renan Realty Corp. v. State, Dep't of Cmty. Affs., Bureau of Hous. Inspection, 182 N.J. Super. 415, 421 (App. Div. 1981).

Petitioner has not demonstrated that the ALJ failed to act reasonably in determining Dr. Boxman's "conclusions and the reasoning underlying those conclusions [were] overborne" by Dr. Lomazow's conclusions. The ALJ supported his reasoning for his determination.

An application for ADRB is governed by N.J.S.A. 43:16A-7(a)(1), which states,

Upon the written application by a member in service, by one acting in his behalf or by his employer any member may be retired on an accidental disability retirement allowance; provided, that the medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.

In Richardson, our Supreme Court set forth the following five-prong standard for establishing a claim for ADRB, stating that a member must show:

1. that [the member] is permanently and totally disabled;

2. as a direct result of a traumatic event that is

   a. identifiable as to time and place,

   b. undesigned and unexpected, and

   c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; an[d]

13

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[192 N.J. at 212-13.]

The ALJ concluded, and the Board adopted the opinion, that petitioner did not prove that she was permanently and totally disabled from the 2012 dog bite incident to establish a claim for ADRB. These determinations were supported by sufficient credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0264-23